Good morning and may it please the Court. My name is Sean Edalion and I'm here on behalf of the appellants today. Before I begin, I wanted to apologize for the last-minute switch-up. My colleague, Brian Harrington, was originally set to argue this today, but he had a family medical emergency, unfortunately, and so I will be arguing in his place. We send the best to his family, and thanks for filling in. I really appreciate that. With respect to credit and debit card numbers, every bit of additional information brings a would-be identity thief closer to being able to perpetuate identity theft or card fraud. The digits matter. They're not innocuous. They're not random. So do you agree that this one digit conveys the same information as printing Visa or MasterCard at the top of the receipt? Yes. What I would like to point out, though, is in connection with the appellee's supplemental excerpts of record, they provided material from Visa, MasterCard, American Express, and Discover. And if you look at those materials, and specifically with, let's start with Visa and MasterCard, both Visa and MasterCard identify the first digit as a security feature and as a way of preventing fraud. And the SCR-11 is for Visa. SCR-23 is for MasterCard. But did Congress consider it a significant risk to print Visa on the top? I mean, Congress didn't prohibit that, did it? Congress heard, as we pointed out in our operative complaint, which is a Second Amendment complaint, Congress heard from approximately 100 witnesses. They heard from the financial industry. They heard from consumers. They heard from banks. They heard from credit and debit card companies. They heard from government agencies, including regulatory agencies. And what Congress did, after having all of that information, is they made an informed determination as to where to draw the line. They drew the line at the last five digits. They believe that if you exceed those last five digits, there is a real risk of harm. And as I just pointed out to defendant's own material, the credit card companies themselves refer to the first digit as a security feature. It's in the materials that I cited, SCR-11. But does Congress prohibit printing Visa and having the last five digits? Congress, the way the statute is specifically worded, it says you may not print any more than the last five digits. Congress did not say that you can print what we prohibit in word form. In other words, let's say you have the first 16 digits of a card number, and a merchant prints the first 16 digits. I don't think anybody would be arguing that that's not a violation. Now, suppose that a merchant ---- Kennedy, I think there are only 16 digits to begin with, aren't there? I'm sorry? Aren't there only 16 digits? So when you say the first 16 digits, that sounds like the whole thing. That's true. Most of the time it's 16. There are exceptions. So, for example, American Express is 15. There are some foreign cards that have longer ---- But basically, when you say print the first 16, you mean print the whole number. The whole number, that's right. Okay. Yeah. But ---- Okay. We know the statute precludes that. Right. And my example that I'm about to give is that if, let's suppose somebody printed in using words the digits. So, for example, they said they spelled out F-O-U-R, and then for the second digit 2, they spelled out 2, and so on and so forth, and they disclosed these 16 digits in word format. I don't think anybody would be arguing that that's a violation because that's just a way of circumventing the plain text of the statute. So what's the risk of harm on the first digit? Absolutely. So in addition to the credit card companies believing that it is a security feature and it is a way of preventing fraud, we pointed out in our operative complaint, for example, the first digit, you cannot have a functioning card without the first digit. It's imperative. There is also an industry algorithm where it checks for the sequence of digits as well as where each digit ---- But anyone who sees Visa at the top will know what the first digit is, right? At the top of a receipt. So if you see a receipt that says Visa, and then it has the last four digits or last five digits, people are going to know what the first digit is, right, because of the statement Visa? If it's printed, yes, in this case. And that's not what this case is about. We attach the receipts. We plead in the complaint. There is no word reference to the word Visa. There is no reference to MasterCard, et cetera. And moreover ---- But sometimes there is. I mean, after I read the briefs, the next time I charged something, I looked at the receipt and it happened to say Visa. So it's not exceptional. I was surprised. I had never noticed that before, but there it was. And I've looked since and I've seen it a number of times. So that seems to be a common practice. I don't know why, but it is. I wouldn't call it a common practice, although I as well have seen it. I've also seen other variances where they print Visa slash MasterCard slash Discover. They just don't identify it. It could be one of them. I've seen instances where they say it's a debit card, it's a credit card. I've seen instances where they say Visa, it's actually a MasterCard. But what determines the actual digit, and just to preface this, is that the digit layout is a variable. It's a field that's a variable. It draws on the information from the credit and debit cards. So if the first digit is a four, it's going to draw on that information and it's going to be reflected on the receipt. Whereas when they print Visa or where they print MasterCard, et cetera, that can be off because it's not actually drawing from the digits. It could be programmed to print that way. And as I said, I've seen those types of – That probably varies reader by reader, right? They could draw it from the four means Visa. If it's programmed that way, they can. But it's not always programmed that way. And so the examples that I was giving is that I've seen instances where it's actually a Visa card. And you can tell from the digits because that's what's being drawn. But for whatever reason, the way they had it programmed was to default to Visa. So did Congress have testimony that sometimes a receipt says MasterCard when it actually is a Visa? I frankly don't know. I did not see that in the actual record. However, the whole point of this is that Congress heard from witnesses. And after hearing from approximately 100 witnesses, it made an informed determination that this is what the law should be and that there is a risk of harm. Is there any greater? Is that enough for us to rely on in light of Spokio? Absolutely. Because one of the ways of identifying harm, as Spokio recognized, as this Court on remand from the Supreme Court Spokio opinion realized, and there's great language in the latest Spokio opinion from this Court that said something to the effect of when dealing with intangible harm in this somewhat murky area of intangible harm, the judgment of Congress is important, is significant. And here, what's really happening, I will not ---- But, Congress, why shouldn't we understand this statute to say that Congress thought it wasn't necessary to prohibit printing Visa on the top of the receipt and that this number 4 at the beginning of the receipt is the same information and that means Congress thought that risk wasn't significant enough under Spokio? Because the plain language of the statute says unambiguously no more than the last five digits should be printed. It says except as otherwise provided in this section. That's subsection G1 of the statute. But we know that there are some things Congress makes illegal in statutes that there still is no standing for, right? Spokio doesn't say everything Congress ever prohibits is always going to have standing. That's true. But here, you know, one of the issues that's going on here, is that we pled ways that this increases the risk of harm. This was at the procedural step posture that we're in currently, is this is from a motion to dismiss. It's not from a motion for summary judgment. We pled that there's an increased risk of harm. Should we read this, though, as the district court, as a fact-finding necessary to figure out if there was jurisdiction found that the risk was the same as printing Visa? That's one measure, and certainly it can't ---- So can we say that that's clear error? I mean, how are we supposed to evaluate that? Well, I think the standard for a motion to dismiss is clear. You have to accept the allegations of the complaint as true. But not if there's a fact-finding on jurisdiction, right? Well, we didn't have an opportunity to fact-find on jurisdiction because the conclusion that there is no harm is contrary to the specific allegations of the complaint, which must be accepted as true. But this particular fact, I think it's the first question I asked you, whether you contend that this number is any different. And the district court found that printing Visa and printing the first digit have the same information, and Congress didn't prohibit it, and so the risk is the same. And it sounds like you don't ---- I didn't think you were really contesting that. Well, the statute does not authorize the printing of Visa or MasterCard in Word format. So if we're going to draw upon what Congress did and didn't do and extrapolate from that, the only statute here is FACTA. And it prohibits the printing of the first digit as well as any digits outside of the last five. You can't ---- Does it prohibit the printing of the cardholder's name? The statute doesn't cover it. And in fact ---- Well, arguably, if you can't print more than, what, the last five digits, so forth, does it prohibit ---- and you're saying that text would be covered if it were the last four, F-O-U-R, does it prohibit printing the cardholder's name? That's critical to identity and puts people at risk of identity theft. My personal view is that it should have been prohibited, but for whatever reason, Congress decided not to prohibit it. But you don't think ---- I mean to ask you, does this statute as worded, in your view,  I mean, one of the arguments made by defendants is that it could be the statute is ambiguous because it could be read to exclude all this other stuff, and obviously it doesn't. You don't appear to be contesting the proposition that putting the cardholder's name on the receipt is not a violation. Is that correct? That's correct. It's not a violation of the statute. Our position is that the plain, unambiguous provisions prohibit the printing of more than the last five digits as well as the expiration date. Every single court, with the exception of this court, this district court within the Ninth Circuit, held that it is unambiguous. In fact, Judge Carter of the Central District called attempts to read ambiguity into the statute absurd. But we know well that there are decisions from elsewhere, including from other circuit courts, that reach different conclusions. So it's not like we have a uniform body of precedent to look to. This seems to be a morass. The only circuit court opinion is from the Second Circuit. That's the recent opinion. But if you look at this Court's opinion in Bateman, that was a situation involving the first four and the last four digits. And this Court had absolutely no problem concluding that that is a violation, and it went on to ex- Do you think that that was dicta? Do you think it was reasoned dicta? I do, because one of the challenges that the defense was making in that case is that there is no increased risk of harm. But it was a class cert order, right? And the merits of the case were not at issue, were they? It was necessary to the Court's holding, because one of the things that the Court was attempting to address is whether the increased risk of harm is a basis to deny class certification. And so the Court, this Court, canvassed the history of the statute. It pointed out that FACTA prohibits the printing of more than the last five digits and the expiration date. It didn't say that it prohibits anything else. So it was clear to this Court that that is what's prohibited. And the facts of that case are the first four and the last four digits, as I said. In addition, the Court, this Court pointed out that the plaintiff there, Bateman, did not assert any identity theft that had occurred, did not assert any actual harm, did not assert. Was there an explicit standing holding in that case? No, there was not, because that was a prespocio case. But nonetheless, from a statutory construction perspective, as far as what's prohibited and what's not, and the reasons that Congress passed the statute. Remember in Bateman, this Court held that one of the primary purposes of FACTA is to deterrent FACTA, to prevent identity theft from occurring before it occurs. I don't think anyone disputes that. I don't even think the defendants dispute that that's the purpose of FACTA, right? I don't believe they do. Now, with that said. We've taken you over your time. I think if you want any time for rebuttal, we'd better cut you off here. So I'll give you two minutes for rebuttal. I appreciate that. Thanks a lot. Good morning, Your Honors. John Papiano for the defendant, Depele Cab Companies. Let me start by saying 100,000 times zero is still zero. What the Court's talking about here in its questioning of plaintiff's counsel is really whether there was a material or we know there was no concrete harm, I would argue. But the question is, is there a material risk of harm? And the answer to that question is no. The plaintiff fails in his Second Amendment complaint, in his briefing, to identify any risk of harm that's happened to him, let alone a material risk of harm. And the reason the Court's asking is, does he really have to? If we're dealing with a statute that provides for statutory penalties, doesn't require proof of actual injury. Indeed, the whole point of setting up a statutory penalty is to give an alternative for whatever reason. But if a plaintiff would be in line for a statutory penalty, isn't that enough to give that plaintiff standing? No. After Spokio, absolutely the answer is no. And I eat. Oh, how can that be? Because that would suggest that Congress can't create statutory penalties that would be effective. Congress can create statutory – Congress can create draft statutes and you can allege a violation of a statute, but the Court and Justice Alito and Spokio – I mean, the Supreme Court was absolutely clear that you still need to allege and identify a concrete harm. Well, there is. I'm not getting my statutory penalty. I'm entitled to it. A penalty is not a concrete harm. Well, did the case in Spokio involve a statute that had a statutory penalty? Spokio, there is a statutory penalty under the FCRA for a willful violation. Yes. And so why wouldn't that be sufficient? Because that's not a concrete harm. A penalty – and I would refer the Court also to the Seventh Circuit's opinion in Myers v. Nicoletta. A statutory penalty is not the same thing as a concrete harm. And I actually – But the concrete harm here would be, if there is a risk, it would be the risk of identity theft. And I hope you would acknowledge that if you printed all of the digits of the credit card on the receipt, that you'd have a violation and there would be standing. Do you agree with that? I think – so there's certainly, if we printed all 16 digits of a credit card number, there would be a violation of statute. And there would be standing. Whether there's standing, I really – I do think, Your Honor, depends on the facts as pled, because there – I can conceive of a set of facts where you put somebody at a material risk of harm, and maybe 16 digits the court would find would be enough, even if – remember, I mean, the credit card in your wallet have all 16 digits. Right, but it stays in your wallet. And the reason we have this thing about receipts is people drop receipts. Correct. There's still one at the restaurant. It stays on the table. I mean, if our credit cards were just out everywhere in the world, that's the whole purpose of this statute. It could theoretically – I can understand the court finding that there's an increase – enough of an increased risk of harm if, you know, everything, the security code, the expiration date, or 16 digits were printed on a credit card. What's going on here, though, is we've got the first digit of the credit card and the last four. Nobody disputes you get five digits, right? So what if, for motion to dismiss stage, somebody is alleging, well, the fact that you've a Visa holder versus MasterCard puts me at more risk for identity theft? Well, I mean, it doesn't put you at more risk for identity theft. The first digit – well, we could have printed the last five digits of the credit card number, and nobody knows that fifth digit, right? And the first digit is, like, literally the least sensitive digit of a credit card. And when counsel talks about how this – on the security feature page of MasterCard, the reason they're telling everybody that their cards begin with a four is not because they're trying to hide the fact that their cards begin with – they're disclosing their cards begin with a four. The security is so that when you know – when you see a MasterCard, it does have a four, that it begins with a four. And so when we get back – But if it does, then it's not a valid card. Correct. Because the card has five. I think Visa's four. Visa's – correct. Okay. Visa – thank you. Visa's four. MasterCard's five. So it can be meaningful. It can be meaningful. But it's telling you what the first digit means. And, you know, I would – there's just no material risk of harm here. I mean, I would refer the Court to Strubell. I mean, the overwhelming majority of precedent out of not just now district courts within the Ninth Circuit, but the Seventh Circuit, the Second Circuit, and district courts throughout the entire country, in cases where there are six digits, the first six digits and the last four digits are finding, look, there's no – there's no plausible allegation of a material risk of harm here. So are we – do we have that option available to us, though, or are we bound by Bateman not to hold that? Bateman is not – Bateman has nothing to do, respectfully, with this case and with standing. Bateman was a class – Okay. Let's put about – I don't think there's a holding in Bateman about standing, but is there a holding in Bateman about what the statute means? The – the language that – what the Court said in Bateman was that the six in a class certification context, in passing, actually, the line that the plaintiff quotes from, the Court was talking about what the plaintiffs had alleged was a violation of the statute. Bateman didn't actually hold that the first six and last four digits was a violation of a statute. It just wasn't an issue. Kind of ambiguous, isn't it? I mean, they start the sentence talking about what the plaintiffs alleged, but does it end up sounding like they're saying, and this is a violation? I mean, it's – it is – it is ambiguous as to what they meant. And the question, I think, that the Court is faced with today, really, is a Spokio question, which drives the conclusion in this case, and has there been a concrete harm or a material risk of harm on a 1 plus 4 is no. But doesn't the Spokio question get informed by what the statute means? Because part of Spokio tells us we should look at Congress's expertise, and so what Congress thought it was prohibiting is at least part of our analysis? Yeah. So the Court in Spokio absolutely said, you know, look, Congress, it's instructive and important to look at what Congress was doing, right? But Spokio also makes crystal clear that the Court, it's the Federal Courts, need to determine whether there has been a concrete harm alleged or a material risk of harm. That's not within – that's ultimately within the Courts. The Court has to decide that for itself, right, in order for a plaintiff to bring a lawsuit in a Federal Court. And I don't actually think Congress was saying here that just getting the receipt constitutes harm. I mean, what Congress did here was pass a statute and said, look, if you get a receipt and the defendant negligently printed more than the last five digits, you can bring a lawsuit to recover your damages. So they were contemplating an actual instances in which something happened to somebody and then they were saying – Well, then why provide for a statutory penalty? Well, because if it's a willful violation, then you can – But that doesn't make a difference to the person who gets the receipt. I mean, you figure that out later, right? So, I mean, whether the company that printed the receipt was willful or negligent doesn't affect what the receipt says. So the Congress – the risk comes from what the receipt says, right? Well, the risk – the risk – there's a risk component that comes with getting a receipt, right, whether there's one digit on it or 16 digits on it. But if Congress gave us statutory penalties for a willful violation because of something a receipt might say, the risk comes from the receipt. So I think we have to assume Congress thought some receipts create enough risk that there's a problem. And so our – then we have to figure out, well, how much risk and which kind of receipt, and that's the difficult question here. But I don't think it's okay to say, like, there's no – there's no risk. I mean, I'm not sure where you were going with your answer to Judge Clifton about there not being risk if it's only negligent. That didn't really make sense. No, no, no. Well, I guess the point that I was trying to – oh, no, I still have two minutes. The point I was trying to make is that there's nothing in the congressional record at all that says that printing the first digit and the last four digits creates a material risk of harm. You're asking plaintiffs' counsel about that. There's just nothing. Well, the statute wasn't written to say you can't print digits that create a material risk of harm. The statute's pretty simple. And I'm sort of baffled as to how come it's been so hard to comply with, and yet we've got all these lawsuits, including this one. I mean, it says not more than the last five digits. We've got in Bateman the first four and the last four. We've got in this case the first and the last four. We've got – and I forgot it was – what it was in Katz. But we've seen lots of variations on the theme. And Congress tries to make it simple by saying don't print more than the last five digits. And why do people do something different? Well, I think your question points to the ambiguity in the statute on what exactly – Well, what's ambiguous about not more than the last five digits? Well, I would refer – the Court, I'm sure, has the Judge Broderick's decision – the Broderick decision from the Western District of Michigan, 2009, because – And he's the one who can ask questions like, well, can you print the name? Can you print what's purchased? And to me, that's a real simple no, you can't. I mean, the statute isn't meant to cover that kind of stuff. The statute speaks to the digits. And if it says not more than the last five digits, I don't know how that gets translated into, well, it's okay to print the first four and the last four or the last six or the first one and the last four. I mean, Congress, I thought, made it pretty simple with regard to the digits, not more than the last five. So why does anybody do something different? Why did your client print the first and the last four?  I don't know, but it didn't do what Congress told it could do and not have a problem. Well, we would take it – I mean, we, of course, argue and don't believe that we actually violated the statute by printing the first digit because it's – as the Court knows, it's simply a numerical equivalent of the brand of card. And so we have now two Federal judges, one in Michigan and one in Nevada, Judge Jones, saying, look, it's not – the statute doesn't prohibit you from printing the first digit because we understand and acknowledge that you're allowed to print – that's in word form what the number signifies. But the statute doesn't say you can print the first and the last five or last four or last any other number. It says not more than the last five, period. Why don't we take Congress at his word? Well, I'm – the question is – Why are you inviting us – I mean, we're not supposed to be activist judges. Why are you inviting us to decide that we're – we know better than Congress and to rewrite the statute that they've written? Well, I think – look, you can certainly take an interpretation that you can only print up to the last five, right? And Judge Jones found that it was ambiguous. And that's the separate reason why I respectfully think that the – that this case should be dismissed. It's ambiguous. So what's ambiguous about not more than the last five? Because – and I was an English major, but not necessarily a grammar major. But what the court was – because the issue becomes print more than the last five digits, more what other than the last five digits. And Judge – and the judge in the Broderick decision said, well, it must mean no more personally identifying information. What is it modifying? See, I can't say that I'm much persuaded by the notion that because you can say the same concept in more than one way, not more than or nothing other than, we're lawyers, we can say the same thing in lots of different words. And I don't know what other than – what not more than the last five digits – what else it could mean with regard to the 16 digits on the card. It says the last five. It doesn't say print any other digits that you want to. It says the last five and not more than that. So what's ambiguous about that? It's the construction of the sentence that's ambiguous. So what could it mean? What else could it mean with regard to the 16 digits? It could mean that you can't print no more personally identifying information than the last five digits. Well, it could say that, but it doesn't say that, does it? Well, it doesn't say you can't print no more digits other than the last five digits, and that's the issue. Well, if you can say things more than one way, that doesn't tell me that saying it in one way is ambiguous. And I haven't heard from you a very compelling answer as to what else this could mean with regard to the printing of digits, except inserting the notion of, well, if it doesn't personally identify, then it doesn't really count. But that's not what the statute says. So I don't see the ambiguity. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. I wanted to address one of the points that Judge Friedland made with respect to how receipts can get discarded, misplaced, et cetera. One of the other issues that comes up here is that the defendant argued in its brief, as well as the district court below, that the receipt is in the possession of a plaintiff. It never left the plaintiff's hands. But Congress knew that type of situation could occur as well. One of the things that could occur is, for example, when you have a receipt that's printed and given to a plaintiff, stores will take a snapshot, for example, when you're using an electronic pad to sign for the receipt. So they will take a snapshot of the receipt. They will retain that copy of the receipt in their records. So just because a customer happens to ---- You have bigger things to worry about with the store. They got all 16 digits. They don't have to smuggle it off the receipt because they got the digits making the charge in the first place. Well, with respect to the merchant side of their records, they ---- What a store will do is it will place limits on who is authorized to view that information. In contrast, when they store a customer copy of a receipt, an electronic form, that has wider access. And so just because a customer keeps the information, provides it to ---- And that's the reason why I'm giving that particular example. Because they can keep a snapshot. I mean, it's happened to me where I've been in a store. I sign the receipt and I see it on the actual screen. And I've seen it in cases as well where that's occurred. And so people have access to that information. And Congress sought to prohibit that type of information from being disclosed. Because you get a lot of e-mail receipts. And if somebody's intercepting your e-mail, then they can get whatever's on the receipt too. Possibly. And that's one of the things. Personally, you asked me, Judge Clifton, about my personal views earlier. If I were drafting the statute, I would have agreed that e-mail receipts should be covered. But Congress apparently felt otherwise and excluded that. But with respect to printed receipts, I was just trying to address defense counsel's argument that just because it's been retained by the plaintiff doesn't mean that there's not another copy floating around out there. And if there is, then people can view it. It's not just limited to viewing it from plaintiff's receipt. And so that's just a real-world example of how this type of stuff operates. I have you over your time. So thank you, counsel. Thanks a lot. I really appreciate it. The case is submitted. Thank you, both sides, for the helpful arguments.
judges: Clifton, Friedland, Gleason